

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**Dated: April 4th, 2023**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

| | |
|---|---|
| IN RE:<br><br>GERALD ROSCOE MOLLOHAN,<br><br><br>Debtor. | CASE NO. 21-bk-20130<br><br>CHAPTER 13<br><br><br>JUDGE MIGNAULT |
| BROTHERS OF THE WHEEL MC EXECUTIVE COUNCIL, INC.,<br><br>Plaintiff,<br>v.<br><br>GERALD ROSCOE MOLLOHAN,<br><br><br>Defendant. | ADVERSARY PROCEEDING NO. 2:21-ap-02007 |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION FOR SUMMARY JUDGMENT

Pending before the Court are two dispositive matters:  (1) Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint [dkt. 238] ("Motion to Dismiss"), Plaintiff's Response to the Motion to Dismiss [dkt. 240] ("BOTW's Response"), and Defendant's Reply in support of dismissal [dkt. 249] ("Mollohan's Reply"); and (2) Plaintiff's Motion for Summary Judgment [dkt. 241] ("Motion for Summary Judgment"), Defendant's various submissions objecting to summary judgment [dkts. 253, 256, 257, 258, 259] ("Mollohan's Response"), and Plaintiff's Reply in support of its Motion for Summary Judgment [dkt. 265] ("BOTW's Reply").  Plaintiff Brothers of

the Wheel MC Executive Council, Inc. ("BOTW") commenced this Adversary Proceeding to

obtain a ruling that certain debts owed by Defendant, Gerald Roscoe Mollohan ("Mollohan"),

arising from a District Court judgment entered prior to Mollohan's current Chapter 13 bankruptcy

case are nondischargeable pursuant to Section 523(a)(6) of Title 11 of the United States Code (the

"Bankruptcy Code").

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).  The Court has jurisdiction

pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

Due to the overly voluminous and largely irrelevant nature of many of the submissions

filed with the Court on these matters, exceeding 1,200 pages, this opinion is narrowly tailored to

address only those submissions that are relevant to the Court's decision.


**I.**


Prior to this Adversary Proceeding, BOTW and Mollohan engaged in over a decade

of contentious litigation relating to use of trademarks in several forums.  One such forum was the

District Court for the Southern District of West Virginia (the "District Court"), which entered a

judgment in favor of BOTW and against Mollohan in Civil Action No. 2:11-cv-00104 (the

"District Court Action").[1]  Throughout this litigious history, Mollohan has vigorously represented

himself *pro se.*

The underlying facts were established over a decade ago in the District Court

Action, where they were "largely, if not wholly, unchallenged by either party . . . ."  *Bros. of the*

---

[1] The Court takes judicial notice of the District Court Action docket, including those docket entries
noted herein.

*Wheel M.C. Exec. Council, Inc. v. Mollohan*, 909 F.Supp.2d 506, 513 (S.D.W. Va. 2012) (the "11/14/12 Order").

BOTW is a motorcycle club that first began in 1977. *Id.* at 514. Since that time, it has continuously operated under the name "Brothers of the Wheel" and used the registered trademark (Registration No. 2926222) below for its logo and patch. *Id.* at 514–15.



Mollohan was once a member of BOTW's organization. *Id.* at 514. As a condition of membership, Mollohan agreed to abide by BOTW's Bylaws, which permitted members and retirees a limited license to use the trademark-protected patch and other items bearing BOTW's registered trademark. *Id.*

Mollohan retired from the club in 2000 and, as a retiree of the club, was permitted to use BOTW's trademark on a limited basis in accordance with the bylaws. *Id.* At some point during his retirement, Mollohan started his own motorcycle club. *Id.* "Although Mollohan could have given his new club virtually any name, he chose, 'Brothers of the Wheel Nomads'" and "also began using the logo of his former club to represent his own."[2] He also began using the initials "BOTW." *Mollohan*, 909 F.Supp.2d at 515. All these uses were in derogation of the limited license Mollohan was afforded under BOTW's bylaws. *Id.* An image of the logo used by Mollohan for his club is shown below, in both color and black & white. *Id.*

---

[2] *Mollohan, et al. v. Warner, et al.*, Civil Action No. 2:13-cv-32251 (S.D.W. Va.), Mem. Op. and Order [dkt. 375] at 1–2.

3

 

On February 15, 2022, BOTW commenced the District Court Action against Mollohan, seeking both monetary damages and an injunction to remedy harms caused by Mollohan's violations of the Lanham Act, 15 U.S.C. §§ 1501, *et seq.*, including trademark infringement and false designation of origin.

On April 7, 2011, District Court Judge Thomas E. Johnston referred the matters presented in the District Court Action to Magistrate Judge Mary E. Stanley to consider the pleadings and submit proposed findings and conclusions to the District Court.

On November 2, 2011, Judge Stanley submitted her proposed findings and recommendations for decision [District Court Action, dkt. 31] ("PF&R"), which were later adopted by Judge Johnston's *Judgment Order* dated November 14, 2012. District Court Action, [dkt. 60] (the "11/14/12 Judgment").

The PF&R recommended that the District Court grant BOTW's Motion for Summary Judgment on BOTW's claim of trademark infringement in violation of section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1), finding that BOTW had proven each of the following elements:

> (1) that BOTW possesses the trademark;
> (2) that Mollohan used the trademark;
> (3) that Mollohan's use of the trademark occurred "in commerce";
> (4) that Mollohan used the trademark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and
> (5) that Mollohan used the trademark in a manner likely to confuse consumers.

4

PF&R 36–45 (applying the facts to the elements of a trademark infringement claim as set forth in *Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)).

In concluding that Mollohan's use of BOTW's trademark caused confusion, Judge Stanley examined certain factors recognized by the Fourth Circuit, including Mollohan's intent. PF&R 40 (citing *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 259 (4th Cir. 2007)). Judge Stanley rejected Mollohan's argument that his intent could not be proven and, instead, found that "his behavior constitutes a knowing and bad faith violation of the license he had as a retired member to use the plaintiff's marks." PF&R 43. Judge Stanley reached this finding, in part, because Mollohan's submissions to the Court admitted he used BOTW's mark as a model for his own trademark. Specifically, Mollohan argued:

> With regard to "intent[,]" the defendant was a member of the plaintiff's club for years and then retired. He then started a new club and it is only normal that he would consider at least some of the characteristics of the logo from his former club."

PF&R 43 (quoting District Court Action dkt. 5) (emphasis added).

Additionally, the PF&R recommended that summary judgment be granted on BOTW's false designation of origin claim in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). Because the legal elements of a false designation of origin claim are identical to those of a trademark infringement claim, Judge Stanley reached this conclusion based upon the findings reached in her prior recommendation regarding BOTW's trademark infringement claim. PF&R 45–46.

The Lanham Act gives confers the "power to grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable, to . . . prevent a violation under [Section 1125(a)]." Applying the legal test for determining whether an injunction

5

may issue set forth in *PBM Products, LLC v. Mead Johnson & Company*, 639 F.3d 111, 126 (4th

Cir. 2011), Judge Stanley found that:

> (1) BOTW has suffered an irreparable injury from Mollohan's infringement of its
> trademark;
> (2) The remedies available at law are inadequate without granting an injunction;
> (3) The balance of the hardships favors BOTW; and
> (4) The public interest would not be disserved by issuing an injunction.

PF&R 50.  Noting that irreparable injury is generally the hardest element to satisfy, Judge Stanley

found that

> All four of the requirements for an injunction are present in this case.
> First, the plaintiff has satisfied the irreparable injury requirement.
> There is evidence of actual confusion, as stated earlier; it has
> suffered monetary losses, as testified to in the affidavit of Mr. Carey
> and not denied by the defendant; and its mark and association have
> become associated with the ne'er-do-well community of motorcycle
> nomads.  There is also an inadequate remedy at law, as it is evident
> that the defendant has no intention of ceasing his infringing
> behavior.  The balance of hardships also falls on the plaintiff's side.
> It is the senior user of the mark, and has spent decades building up
> its name and reputation; any losses suffered by the defendant are his
> own fault, especially after he admittedly used the plaintiff's mark as
> his inspiration.  The public would also not be disserved by the
> issuance of an injunction against the defendant.

PF&R 52–53.  Therefore, the PF&R recommended that the District Court grant a permanent

injunction prohibiting Mollohan from using BOTW's trademark or any similar mark.  PF&R 53–

54.

The PF&R further recommended that the District Court award BOTW

compensatory damages and treble damages under the Lanham Act, 15 U.S.C. § 1117(a)–(b), as

well as attorney's fees.  PF&R 54–55.  In concluding that attorney's fees are warranted, Judge

Stanley explained that attorney's fees are permissible under section 1117(a) of the Lanham Act

only in "exceptional cases" where the "defendant's conduct was <u>malicious, fraudulent, willful or</u>

<u>deliberate in nature</u>.  In other words, a prevailing plaintiff must show that the defendant acted in

bad faith." PF&R 55–56 (citing *People for the Ethical Treatment of Animals v. Doughney*, 263

F.3d 359, 370 (4th Cir. 2001)) (emphasis added).  Judge Stanley recommended that the District

Court rule that Mollohan's conduct warranted an award of treble damages and attorney's fees

because:

> [T]here has been willful infringement by the defendant.  The
> defendant is a past member of the plaintiff, and the defendant had
> previously been using the defendant's marks under a license.  He
> admits that he used the plaintiff's marks in creating his own club, in
> derogation of the license. . . and in bad faith.  He has clearly created
> exceptional circumstances warranting an award of attorney's fees.

PF&R 56–57.

Judge Stanley did not recommend a specific dollar amount for this award, but

instead recommended that the parties be required to submit more detailed information to the

District Judge before a damages award is calculated.  PF&R 56.

On November 14, 2012, Judge Johnston entered the 11/14/12 Judgment and

11/14/12 Order formally adopting Judge Stanley's PF&R, ordering that BOTW's Motion for

Summary Judgment is granted, and issuing a permanent injunction to prohibit Mollohan from

using BOTW's trademark.    Judge Johnston specifically agreed with Judge Stanley's

recommendation that all four factors required to issue an injunction are satisfied; Judge Johnston

quoted Judge Stanley's analysis of these factors and added, "[i]t is apparent to the Court that

Defendant Mollohan was aware of Plaintiff's logo and word mark, and his subsequent use of each

was therefore in bad faith." *Mollohan*, 909 F.Supp.2d at 525.  The 11/14/12 Order further gave

each of the parties 30 days to submit reports detailing their damages and costs, including attorney's

fees. *Id.*

However, BOTW subsequently failed to prove its damages with reasonable

certainty as required by the law of damages in tort actions, which governs trademark actions. *Bros.*

*of the Wheel M.C. Exec. Council v. Mollohan*, Civ. Action No. 2:11-cv-00104 [dkt. 83], 2013 U.S. Dist. LEXIS 79415, at \*5 (S.D. W. Va. 2013) (citing *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993)).   Therefore, on June 6, 2013, the District Court awarded BOTW nominal treble damages in the amount of $3.00.  *Id.* at \*6.  Since BOTW remained entitled to recover its attorney fees, the District Court ordered BOTW to produce a detailed itemization of its lawyer's fees and costs within 30 days.  *Id.* at \*12.  BOTW complied, and on February 19, 2014, the District Court entered a *Final Judgment Order* ordering Mollohan to pay BOTW $17,490 in attorney's fees.  District Court Action, dkt. 139.

Defendant Mollohan commenced a voluntary bankruptcy case under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") on June 3, 2021.

The Bankruptcy Court entered its standard *Notice of Chapter 13 Bankruptcy Case* [dkt. 11] on June 9, 2021, which established August 12, 2021 (the "Bar Date") as the deadline for all creditors (except governmental units) to file a proof of claim against Mr. Mollohan.

On July 23, 2021, BOTW timely filed a proof of claim asserting a $17,493.00 claim for "Judgment for damages and attorney fees for trademark infringement."  Proof of Claim 6-1.[3]

On July 23, 2021, BOTW commenced this Adversary Proceeding.

---

[3]  BOTW amended this claim on April 6, 2022 to include "unspecified amounts to be determined in suit for vexatious litigation and in pending contempt action."  Presumably, this addition was intended to incorporate any damages that might be awarded in this Adversary Proceeding; however, this Adversary Proceeding will address only whether Plaintiff's $17,493 prepetition claim is nondischargeable.  BOTW again amended its claim on June 8, 2022 to characterize its claim as secured; however, the Bankruptcy Court granted the Chapter 13 Trustee's Objection and entered an Order on October 24, 2022 [dkt. 148] disallowing BOTW's amended claim and holding that BOTW's claim will be paid as an unsecured claim under the approved Chapter 13 confirmation order.

BOTW's Complaint, which has been twice amended at the direction of the Court to clarify the factual and legal basis for BOTW's claims, asserts the Mollohan's $17,493 debt to BOTW is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) because Mollohan's actions constitute a willful and malicious injury to BOTW.

On September 21, 2022, Mollohan filed his Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  On October 5, 2022, BOTW filed its response, arguing that the Complaint alleges facts that plausibly suggest entitlement to relief under Section 523(a)(6), and therefore, the Motion to Dismiss should be denied.  Pl.'s Resp. 5–6.  Mollohan filed his Reply in support of his Motion to Dismiss on November 3, 2022.

While the Motion to Dismiss submissions were underway, the BOTW filed its Motion for Summary Judgment on October 5, 2022, arguing that the Court should apply the findings of the District Court to the elements of nondischargeability under Section 523(a)(6) and determine that either *res judicata* or collateral estoppel entitles BOTW to summary judgment as a matter of law.  BOTW's Motion for Summary Judgment cites and encloses a substantially similar, 2014 case where the Bankruptcy Court for the Eastern District of New York determined that collateral estoppel bars relitigation of the district court's prior findings relating to the debtor's willful and malicious violations of the Lanham Act, entitling the creditor to summary judgment on its nondischargeability complaint brought under section 523(a)(6) of the Bankruptcy Code. *Guggenheim Cap., LLC v. Birnbaum (In re Birnbaum)*, 513 B.R. 788 (Bankr. E.D.N.Y. 2014).

Mollohan filed at least five documents in response to the Motion for Summary Judgment [dkts. 253, 256, 257, 258, 259] totaling nearly 900 pages, which largely focus on re-argueing matters that have already been disposed of by this court and that exceed the scope of

BOTW's Motion for Summary Judgment.  In relevant part, Mollohan argues that "Plaintiff's motion for summary judgment is frivolous, slanderous, premature, inappropriate and defective. Plaintiff's [*sic*] failed to allege any real facts supporting any of their purported and bogus claims." Def.'s Resp. [dkt. 256-1] 6.  Mollohan argues that "[t]he district court did not establish the elements of willful and malicious injury § 523(a)(6)" and the district court judgment resolved issues that are "not identical to the issues in this adversary proceeding and should not be susceptible to summary adjudication."  *Id.* at 5.  Mollohan's Response points to several "material facts" that bar summary judgment; however, these "material facts" are not relevant to nondischargeability of a debt pursuant to Section 523(a)(6) and exceed the scope of this Adversary Proceeding.[4]  Further, these "material facts" are also inappropriate to the extent they attempt to collaterally attack the legitimacy and finality of District Court's final ruling and this Court's prior rulings.

On January 14, 2013, BOTW filed its reply in support of its motion for summary judgment.  BOTW's Reply correctly describes Mollohan's Response as containing "numerous irrelevant and disjointed statements, most of which [Mollohan] has presented previously, [and which] do not respond to the Motion for Summary Judgment and do not offer any facts or law to dispute the facts set forth in the [BOTW's] Motion for Summary Judgment."  BOTW's Reply 1. BOTW's Reply also points out that Mollohan's Response includes "false and defamatory

---

[4]  The "material facts" provided by Mollohan include: (1) that BOTW's President made fraudulent representations to various authorities when registering its trademark [dkt. 256, pp. 11–12]; (2) that "Defendant has not agreed to be servant to anyone as Plaintiff President Paul D. Warner and his Brothers of the Wheel M.C. Executive Council, Inc. mark is (no control of mark) and always been (naked licensing)" [*id.* at 16]; (2) that "Paul D. Warner (Plaintiff President) simply does not have any facts to present, so he just makes them up as he goes along" [*id.*]; (3) "[t]here are absolutely no similarities or overlaps regarding trade channels" [*id.*].

assertions about the plaintiff and its members" in violation of this Court's Order dated November

3, 2021.  *Id.* at 2.[5]

---

[5]  Mollohan has twice been sanctioned by this Court.  Mollohan was first sanctioned by this Court
on November 3, 2021 [dkt 90] for (a) submitting voluminous filings (filing approximately 50
documents totaling 775 pages in a little over 2 months), (b) submitting filings that fail to assert
colorable legal arguments and lack evidentiary support, and (c) submitting numerous filings that
appear to be entirely irrelevant to this Adversary Proceeding and designed solely to harass, insult
or embarrass BOTW and/or BOTW's counsel.  *Op. and Order Imposing Sanctions Against Def.*
[dkt. 90].  Mollohan was subsequently sanctioned for violating a Court order compelling him to
attend and participate in a deposition.  In this instance, the Court devoted a half-day to watching a
video deposition of Mollohan in the Courtroom and, after viewing that deposition, concluded:

> Defendant answered very few questions in a three-hour period,
> instead relying on blanket objections having no legal basis.
> Defendant refused to recognize the legitimacy of this Court's order
> compelling him to answer questions during the deposition, refused
> to recognize the legitimacy of the deposition in general, refused to
> recognize the legitimacy of the Federal Rules of Civil Procedure,
> refused to recognize the legitimacy of the Order entered by the
> Southern District of West Virginia enjoining him from using certain
> trademarks because he viewed the order as being obtained by fraud,
> and refused to recognize the legitimacy of Plaintiff's trademarks
> because he viewed them as being obtained by fraud.  Defendant did
> not appear to be harassed during the deposition as he claimed; rather,
> he conducted himself without emotional distress and appeared to
> enjoy throwing wrenches into the deposition, sometimes even
> smiling or laughing.  Most disturbingly, Defendant appeared to use
> his *pro se* status as a tool to frustrate Plaintiff's efforts at discovery,
> persisting in intentional misunderstandings of this Court's orders,
> intentional misunderstandings of other courts' orders, intentional
> misunderstanding of the Rules of Civil Procedure, and persisting in
> baseless legal theories, all because he does not have a lawyer.  These
> abusive and vexatious litigation tactics and disrespect for the legal
> system cannot be permitted to continue to waste party and judicial
> resources.

Order [dkt. 181] 2–4.  These sanctions (1) prohibited Mollohan from representing himself and
from submitting filings without first obtaining prior Court approval, (2) prohibited Mollohan from
submitting filings with this Court that identify him using the word mark "BROTHERS OF THE
WHEEL" and "BOTW" in violation of the District Court's injunction, and (3) required Mollohan
to compensate BOTW for its costs and legal fees associated with the deposition.

The matter is ready for adjudication.

## II.

**A.      Motion to Dismiss**

### 1.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing...entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2).  Federal Rule of Civil Procedure 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), *overruled on other grounds*, *Twombly*, 550 U.S. at 562–63); *McCleary–Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).  Additionally, the showing of an "entitlement to relief" amounts to "more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555.  It is settled that "a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal citations omitted); *McCleary–Evans*, 780 F.3d at 585; *Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008).  "Rather, the complaint must set forth enough factual matter (taken as true) to suggest a cognizable cause of action, even if the actual proof of those facts is improbable and recovery is very remote and unlikely."  *Prynne v. Settle*, 848 Fed. Appx. 93, 99 (4th Cir. 2021) (internal citations omitted).

The complaint need not "forecast evidence sufficient to prove the elements of [a] claim," but it must "allege sufficient facts to establish those elements."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (internal citation omitted).  Stated another way, the operative

pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the opening pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."); *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020). In sum, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570.

The decision in *Iqbal* provides some additional markers concerning the plausibility requirement:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

> . . . .

> . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 678–79 (citations omitted).

  The Supreme Court has consistently interpreted the Rule 12(b)(6) standard to require a court to "'accept as true all of the factual allegations contained in the complaint . . .'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Twombly*, 550 U.S. at 555–56); *see also Prynne*, 848 Fed. Appx. at 99; *S.C. Dep't of Health and Envtl. Control v. Com. and Indus. Ins. Co.*, 372 F.3d 245, 255 (4th Cir. 2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir. 2002)).  The court is additionally required to "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor . . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### 2.  Analysis

  Pursuant to § 523(a)(6), a creditor has a nondischargeability claim if the debt was incurred by "willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  Any movant under section 523(a)(6) must prove three elements by a preponderance of the evidence: "(1) the debtor caused an injury; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious." *Ocean Equity Grp., Inc. v. Wooten (In re Wooten)*, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010) (internal citations omitted); *Quality Car and Truck Leasing v. Adkins (In re Adkins)*, 567 B.R. 501 (Bankr. S.D.W. Va. 2017).  Additionally, BOTW must allege that the debtor has "engaged in such conduct with the actual intent to cause injury." *TKC Aerospace, Inc. v. Muhs (In re Muhs)*, 923 F.3d 377, 385 (4th Cir. 2019) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) and *In re Duncan*, 448 F.3d 725, 729 (4th Cir. 2006)).

  Here, BOTW has alleged all four elements in its Complaint.  Specifically, BOTW alleges that: (1) Mollohan caused an injury to BOTW and its trademark by engaging in trademark

infringement and false designation of origin in violation of the Lanham Act (Compl. ¶¶ 3, 5, 7–8); (2) Mollohan's actions were willful (Compl. ¶¶ 2–5, 7–11); (3) Mollohan's actions were malicious (Compl. ¶¶ 2, 4–5, 7–11, 14); and (4) Mollohan's actions were intended to injure BOTW (Compl. ¶¶ 4–5, 7).   Treating the allegations in the Complaint as true, it is apparent that BOTW has sufficiently alleged facts to establish the required elements of a nondischargeability claim pursuant to § 523(a)(6).

### B.    Motion for Summary Judgment

#### 1.   Legal Standard

Federal Rule of Civil Procedure 56, made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, authorizes summary judgment only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.   "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "However, the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

#### 2.   Analysis

BOTW's Motion for Summary Judgment contends that Mollohan's debt to repay the $17,493 judgment awarded in the District Court Action is nondischargeable pursuant to Section

523(a)(6) because the findings of the District Court in the District Court Action, which are binding

upon this Court under the doctrines of collateral estoppel and *res judicata*, satisfy the elements of

a Section 523(a)(6) action.  Mot. for Sum. Jud. at 8–10.  Mollohan's Response argues that, because

the issue to be decided in this Adversary Proceeding is not identical to the issues decided in the

District Court Action, summary judgment is not appropriate.  Def.'s Resp. at 1–2.  In reply, BOTW

argues that Mollohan has not met his burden to show any genuine issue of material fact exists to

preclude granting summary judgment in this case.  Def.'s Reply at 1–2.  These arguments are

addressed in turn below.

      *a.*      **Res Judicata**

      The doctrine of *res judicata*, or claim preclusion, prohibits re-litigation of "further

claims by parties or their privies based on the same cause of action" if a final decision has already

been rendered.  *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*quoting Montana v. U.S.*, 440 U.S.

147, 153 (1979)).  The United States Supreme Court has held, however, that *res judicata* is

inapplicable in the bankruptcy nondischargeability context.  *Id.* at 138–39 ("[A] bankruptcy court

is not confined to a review of the judgment and record in the prior state-court proceedings when

considering the dischargeability of respondent's debt.").  In *Brown*, the debtor/defendant argued

that *res judicata* applied and, therefore, the creditor/plaintiff waived its nondischargeability claim

by not raising that issue in the prior state court lawsuit.  *Id.* at 136.  The Supreme Court rejected

this argument because it is contrary to Congress' clear intent that nondischargeability be resolved

by the Bankruptcy Court.  *Id.* at 138–39.[6]

---

[6]  The Supreme Court's decision in *Brown* applies to "res judicata only, and not the narrower
principle of collateral estoppel."  *Brown*, 442 U.S. at 139 n.10.

*Res judicata* principles have no bearing on the Circuit Court's Order.  BOTW is consequently not entitled to summary judgment on *res judicata* grounds.

###### b.        *Collateral Estoppel*

Collateral estoppel, or issue preclusion applies "when the later litigation arises from a different cause of action" and "operates to bar subsequent litigation of those legal and factual issues common to both actions that were 'actually and necessarily determined by a court of competent jurisdiction' in the first litigation." *Schwartz v. J.J.F. Mgmt. Servs., Inc.*, 922 F.3d 558 (4th Cir. 2019) (citing *Montana*, 440 U.S. at 153).   Collateral estoppel principles apply to nondischargeability actions when the elements of a claim proved in the first action are sufficient to establish the elements required for nondischargeability.  *Grogan v. Garner*, 498 U.S. 279, 284–85, 291 (1991) (holding that the preponderance of the evidence standard governs the question of nondischargeability and, thus, "a bankruptcy court [can] properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated and determined in the prior action.").

In assessing the applicability of collateral estoppel, the bankruptcy court applies the law of the tribunal entering the prior judgment.  *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997) (citations omitted).  In this case, the District Court entered the prior judgment applying the federal Lanham Act.  "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008); *In re Muhs*, 923 F.3d 377 (4th Cir. 2019).

For collateral estoppel to apply under federal common law, the proponent of collateral estoppel must establish that:

> (1) the issue or fact is identical to the one previously litigated;
> (2) the issue or fact was actually resolved in the prior proceeding;

17

(3) the issue or fact was critical and necessary to the judgment in the
prior proceeding;

(4) the judgment in the prior proceeding is final and valid; and

(5) the party to be foreclosed by the prior resolution of the issue or
fact had a full and fair opportunity to litigate the issue or fact in
the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004).


### *The Issues are Identical to Those Previously Litigated.*

For collateral estoppel to apply, the issues in this Adversary Proceeding must be identical to those litigated already by the District Court.  Section 523(a)(6) presents four issues in this case, which BOTW must prove by a preponderance of the evidence:

(1) the debtor caused an injury;

(2) the debtor's actions were willful;

(3) the debtor's actions were malicious; and

(4) the debtor's actions were intended to cause injury.

*Ocean Equity Grp., Inc.*, 423 B.R. at 128; *In re Muhs*, 923 F.3d at 385.

A finding of nondischargeability requires more than "negligent, grossly negligent, or reckless conduct."  *Duncan*, 448 F.3d at 729.  "Section 523(a)(6)'s exception from discharge is associated with the law of intentional torts, and conduct that is negligent or reckless remains dischargeable."  *Raedar*, 409 B.R. at 383 (*citing Geiger,* 523 U.S. at 60).  "Willful" requires deliberate or intentional acts, while "malicious" refers to acts that are "wrongful and without just cause or excessive even in the absence of personal hatred, spite, or ill will."  *Geiger*, 523 U.S. at 61; *Nestorio v. Assoc. Com. Corp. (In re Nestorio)*, 250 B.R. 50, 57 (D. Md. 2000) (*quoting St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1008 (4th Cir. 1985)).  A debtor's "subjective mind set is central to the inquiry as to whether debtor acted deliberately in knowing

disregard of a creditor's rights in property," in terms of the willfulness inquiry, and for the

maliciousness requirement, a "plaintiff creditor can even establish malice on an implied basis from

a showing of debtor's behavior, as well as a presentation of the surrounding circumstances." *In re*

*Davis,* 262 B.R. 663, 670–71 (Bankr. E.D. Va. 2001) (*citing St. Paul Fire & Marine Ins. Co.*, 779

F.2d at 1010).

      The District Court's prior findings satisfy each of these elements. First, the District

Court Order adopted findings from Judge Stanley's PF&R establishing that BOTW has suffered

not only an injury, but an *irreparable* injury from Mollohan's infringement of its trademark.

PF&R 50. Noting that irreparable injury is generally the hardest element to satisfy, Judge Stanley

specifically found that

> All four of the requirements for an injunction are present in this case. First,
> the plaintiff has satisfied the irreparable injury requirement. There is
> evidence of actual confusion, as stated earlier; it has suffered monetary
> losses, as testified to in the affidavit of Mr. Carey and not denied by the
> defendant; and its mark and association have become associated with the
> ne'er-do-well community of motorcycle nomads. There is also an inadequate
> remedy at law, as it is evident that the defendant has no intention of ceasing
> his infringing behavior. The balance of hardships also falls on the plaintiff's
> side. It is the senior user of the mark, and has spent decades building up its
> name and reputation; any losses suffered by the defendant are his own fault,
> especially after he admittedly used the plaintiff's mark as his inspiration. The
> public would also not be disserved by the issuance of an injunction against
> the defendant.

PF&R 52–53; *see also* 11/14/12 Order 23. Therefore, the District Court's 11/14/12 Order adopting

the PF&R has already determined that Mollohan's violations of the Lanham Act have injured

BOTW, satisfying the first element required to prove a debt is nondischargeable under Section

523(a)(6).

      Additionally, he District Court's 11/14/12 Order also adopted findings from Judge

Stanley's PF&R that BOTW's actions in violating the Lanham Act were both willful and

malicious. In awarding attorney's fees, Judge Stanley concluded that attorney's fees are warranted

under section 1117(a) of the Lanham Act because the District Court Action was an "exceptional

case" where the "defendant's conduct was <u>malicious, fraudulent, willful or deliberate in nature</u>.  In

other words, a prevailing plaintiff must show that the defendant acted in bad faith."  PF&R 55–56

(citing *Doughney*, 263 F.3d at 370.  Judge Stanley specifically found that:

> [T]here has been willful infringement by the defendant.  The defendant is a past
> member of the plaintiff, and the defendant had previously been using the
> defendant's marks under a license.  He admits that he used the plaintiff's marks in
> creating his own club, in derogation of the license. . . and in bad faith.  He has
> clearly created exceptional circumstances warranting an award of attorney's fees.

PF&R 56–57.

Taken together, the totality of these findings by the District Court can lead to no

other conclusion than that the Mollohan intended to injure BOTW and/or BOTW's property by

willfully and maliciously infringing upon BOTW's trademark and work mark, intentionally using

them for his outlaw motorcycle club in willful derogation of his limited license set forth in

BOTW's bylaws.  The District Court Order further found that "it is apparent to the Court that

Defendant Mollohan was aware of BOTW's logo and word mark, and his subsequent use of each

was therefore in bad faith."  11/14/12 Order at 23.  "[H]is behavior constitutes a knowing and bad

faith violation of the license he had as a retired member to use the plaintiff's marks."  PF&R 43.

Further, he used these marks on various internet sites and to sell products bearing the marks, and

in doing so, damaged the goodwill and reputation of BOTW.  PF&R 14, 38–39, 43, 46.  Until

being sanctioned for doing so, Mollohan continued to violate the District Court's injunction in

pleadings filed with this Court that identify Mollohan as "Gerald R. Mollohan AKA BROTHERS

OF THE WHEEL," "THE LEGITIMATE BROTHERS OF THE WHEEL," and owner of the word

marks "BROTHERS OF THE WHEEL" and "BOTW."  *Op. and Order Imposing Sanctions*

*Against Def.* [dkt. 90] at 8.

### *Resolution of These Issues was Critical and Necessary to the Prior Proceeding.*

These issues were actually resolved by the District Court in the PF&R and 11/14/12 Order, and the District Court's resolution of these issues was critical and necessary to the judgment rendered. Indeed, each of these issues were essential components of the legal tests for BOTW to prevail on its claims of trademark infringement and false designation of origin, to receive a permanent injunction, and to receive treble damages and attorney's fees.

### *The District Court Judgment is Final and Valid/Opportunity to Litigate.*

Finally, the 11/14/12 Order is a final and appealable order, and Mollohan had and full and fair opportunity to litigate the judgment. Indeed, Mollohan appealed the District Court Order to the Fourth Circuit Court of Appeals. Mollohan's Notice of Appeal was filed November 23, 2012, and the appeal was dismissed by unpublished *per curiam* opinion dated April 18, 2013. District Court Action, dkts. 62, 76–77.

### c.    *Conclusion*

BOTW is entitled to summary judgment because collateral estoppel bars relitigation of the District Court's findings as set forth in the PF&R and adopted by the District Court Order. As discussed herein, the issues resolved in the District Court Action satisfy the legal test to render Defendant's debt to BOTW nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Defendant has not met his burden to show that material facts remain that must be resolved by this Court to reach a nondischargeability ruling under section 523(a)(6).

## III.

Having analyzed the applicable standards, the Court has determined that: (1) the Complaint states a claim upon which relief can be granted pursuant to 11 U.S.C. § 524(a)(6); and (2) the Plaintiff is entitled to summary judgment as a matter of law.  Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss be, and is hereby, **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment be, and is hereby **GRANTED** and Defendant's $17,493 debt to Plaintiff is **NONDISCHARGEABLE**.

The Clerk's Office shall serve a copy of this written opinion and order on Plaintiff, Plaintiff's Counsel, Defendant, Defendant's Counsel, and the United States Trustee.